**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Tonja Swain, | NO. C 09-01096 JW |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| v. | |
| Dywidag-Systems International USA, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION

Tonja Swain ("Plaintiff" or "Swain") brings this action against Dywidag-Systems International USA, Inc. ("Dywidag"), Field Ironworkers Apprenticeship and Training Program ("Apprenticeship Program"); S.F. Field Ironworkers Joint Apprenticeship Committee ("JATC"), Ironworkers Local 377 ("Local 377"), Dennis Meakin ("Meakin") and Dana Fairchild ("Fairchild") (collectively, "Defendants"), alleging violations of Cal. Gov't Code § 12940, *et seq*., and intentional infliction of emotional distress.  Plaintiff alleges that Defendants sexually harassed her and discriminated against her because she is a woman.

Presently before the Court are Defendant Local 377 and Dennis Meakin's Motion to Dismiss, Defendant Dana Fairchild's Motion to Dismiss and Plaintiff's Motion to Remand.[1]  The

---

[1] (Ironworkers Local 377 and Dennis Meakin's Motion to Dismiss, Docket Item No. 5; Re-Notice of Ironworkers Local 377 and Dennis Meakin's Motion to Dismiss, Docket Item No. 26; Defendant Dana Fairchild's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can

Court conducted a hearing on June 1, 2009. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Motion to Remand and DENIES Defendants' Motions to Dismiss without prejudice to be renewed in state court.

## II. BACKGROUND

**A.    Factual Allegations**

In a Complaint filed on February 6, 2009, Plaintiff alleges as follows:

Plaintiff is a woman of Native American ancestry, and a citizen of California.[2] Defendant Dywidag is a New York corporation in the business of development and application of Post-Tensioning and Geotechnical Systems for the construction industry. (Complaint ¶ 2.) Defendant Apprenticeship Program is an unincorporated labor association, established under a Collective Bargaining Agreement ("CBA") between contractors and unions, that oversees Defendant JATC, a local joint apprenticeship and training committee consisting of representatives of employers and the local union. (Id. ¶ 4.)[3] Defendant Local 377 is an unincorporated labor association that represents workers in the ironworking industry. (Id. ¶ 6.) Defendant Fairchild is a representative of Defendants Local 377, the Apprenticeship Program and the JATC. (Id. ¶ 9.) Defendant Meakin is a representative of Defendants Local 377, the Apprenticeship Program and the JATC. (Id. ¶ 10.)

In 2006, Plaintiff began learning the ironwork trade through San Francisco's City Build program. (Complaint ¶ 13.) She finished third in her class of 35. (Id.) Prior to the alleged sexual harassment at issue, Plaintiff was consistently assigned to jobs. (Id. ¶ 14.) In December 2006, Plaintiff enrolled with the JATC. (Id.) Defendant Meakin assigned

---

Be Granted, Docket Item No. 9; Re-Notice of Dana Fairchild's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, Docket item No. 25; Motion to Remand, hereafter, "Plaintiff's Motion," Docket Item No. 20.)

[2] (Notice of Removal of Civil Action Under 28 U.S.C. § 1441(b), Ex. A ¶ 1, hereafter, "Complaint," Docket Item No. 1.)

[3] The paragraphs of Plaintiff's Complaint have been misnumbered. However, in the interest of consistency, the Court refers to allegations as they are numbered in the Complaint.

ironworking jobs in the San Jose, California region through the Apprenticeship Program and the JATC.  (Id.)  In May 2008, Plaintiff was assigned to a job with Defendant Dywidag at the San Jose International Airport.  (Id. ¶ 15.)  Plaintiff was the only woman working on that job.  (Id.)

During Plaintiff's first day on the job with Dywidag, Dywidag's foreman began referring to her through derogatory terms like "His Indian," "His Squaw," and "Honey-Bun."  (Id.)  Dywidag's foreman forced Plaintiff to work next to him, and then constantly stared at her.  (Id. ¶ 16.)  On several occasions, Dywidag's foreman propositioned Plaintiff for sex, and informed her that he would like a friend to join and that he was "horny as hell."  (Id.)  Dywidag's foreman repeatedly used sexually and racially derogatory terms for Plaintiff in front of others.  (Id.)  The harassment escalated when the foreman and steward together used sexually demeaning remarks towards Plaintiff, and indicated they wanted to, *inter alia*, have violent sex with her.  (Id. ¶ 18.)  Dywidag's foreman also proposed a *quid pro quo* exchange for sex, offering a full day's pay in exchange for "a chance to get in [Plaintiff's] pants."  (Id. ¶ 19.)  Plaintiff found the conditions of her employment with Dywidag so unendurable, that she was forced to leave the job.  (Id. ¶ 21.)

In May 2008, Plaintiff complained to Defendant Meakin about the harassment.  (Complaint ¶ 22.)  Meakin, who held the power to assign jobs through the JATC, told Plaintiff that if she pursued the matter she would not be assigned to any jobs.  (Id. ¶ 23.)  Plaintiff subsequently reported the harassment to union members and representatives of the city, state and federal contracting agencies.  (Id. ¶ 23.)  She was promptly "blacklisted," and Meakin made sure that she was not assigned any work.  (Id. ¶ 25.)  After not being assigned a job from June 2008 to August 2008, Plaintiff was kicked out of the union.  (Id.)

In September 2008, Plaintiff pleaded with Defendants to be reinstated into the union.  (Id. ¶ 26.)  Defendant Fairchild, and Apprenticeship Coordinator, told Plaintiff that she should take a leave of absence "until her 'case' was resolved."  (Id.)  Plaintiff was reinstated

into the union, but Defendant Meakin continued to refuse to assign her work. (Id. ¶ 26-27.) When Plaintiff was finally able to obtain work, she was involuntarily placed on medical leave by Defendant Fairchild. (Id. ¶ 27.)

On the basis of the allegations outlined above, Plaintiff alleges four causes of action:[4]

| Causes of Action | Defendants |
| --- | --- |
| Sexual Harassment in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, *et seq.* | Apprentice Program, JATC, Local 377, Meakin and Fairchild ("Union Defendants") |
| Sexual Harassment and Discrimination in violation of Cal. Gov't Code § 12940 | Dywidag |
| Retaliation in violation of Cal. Gov't Code § 12940(h) | Apprentice Program, JATC, Local 377, Meakin and Fairchild |
| Intentional Infliction of Emotional Distress | All Defendants |

**B.    Procedural History**

On February 6, 2009, Plaintiff filed her Complaint in the Superior Court for the State of California in the County of Santa Clara. (Complaint at 1.) On March 12, 2009, Defendants Apprenticeship Program, JATC, Local 377, Meakin and Fairchild removed this case to federal court. (See Notice of Removal, Docket Item No. 1.) The case was removed under 28 U.S.C. § 1441(b) on the ground that Plaintiff's claims concern the administration and enforcement of the CBA between Local 377 and Dywidag, and therefore are governed by federal law pursuant to § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185. (Notice of Removal ¶¶ 9-10.)

Presently before the Court are Defendants' Motions to Dismiss and Plaintiff's Motion to Remand. Since Plaintiff's Motion may prove dispositive of the entire case, the Court proceeds to first consider the issue of remand.

---

[4] Plaintiff alleges five causes of action. However, her Second Cause of Action for violations of Cal. Gov't Code § 12940, *et seq.*, is brought against only Doe defendants.

4

### III. STANDARDS

If, prior to final judgment, the district court discovers its lack of subject matter jurisdiction, it must remand the case. 28 U.S.C. § 1447(c). The defendant seeking removal of an action to federal court bears the burden of establishing grounds for federal jurisdiction. Quinones v. Target Stores, 2005 U.S. Dist. LEXIS 31915 (N.D. Cal. 2005). Removal statutes are construed restrictively. Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988). Doubts as to removability are resolved in favor of remanding the case to state court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

### IV. DISCUSSION

Plaintiff moves to remand this action to the state court on the ground that, *inter alia*, it was improperly removed. Plaintiff contends that the Court lacks subject matter jurisdiction because her claims under the FEHA are not preempted by § 301 of the LMRA, thus rendering Defendants' removal based on federal question jurisdiction improper. (Plaintiff's Motion at 6.) In response, the Union Defendants contend that Plaintiff's FEHA claims are disguised breach of the CBA and breach of the duty of fair representation claims, which are governed by § 301 of the LMRA and § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a). (Opposition to Plaintiff's Motion to Remand at 4-5, hereafter, "Opposition," Docket Item No. 30.) The Court addresses each issue in turn.

**A.    Preemption Under § 301 of the LMRA**

The parties' dispute turns on whether Plaintiff's FEHA claim requires an interpretation of the CBA. Plaintiff contend that her claims require reference to the CBA in that the CBA defines the relationships between the parties. (Plaintiff's Motion at 9-10.) Defendants contend that Plaintiff's claims require the Court to interpret § 10 of the CBA, which governs the referral procedure for assigning apprentices work. (Opposition at 4.)

Under § 301 of the LMRA, federal courts have jurisdiction over all "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Section 301

5

preempts a state-law claim "if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement." Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 750 (9th Cir. 1993). However, if a state-law claim requires mere reference to a collective bargaining agreement, then the claim will not be governed by § 301. Detabali v. St. Luke's Hospital, 482 F.3d 1199, 1203-04 (9th Cir. 2007). Whether a claim requires mere "reference," as opposed to "interpretation," turns on the particular theory of liability presented by the plaintiff's allegations. Id.; see also Guidry v. Marine Engineers' Beneficial Ass'n, No. C 05-3960 CRB, 2007 WL 707511, at *5 (N.D. Cal. Mar. 6, 2007).

With respect to FEHA claims, the Ninth Circuit has held they are not generally preempted by § 301. Ramirez, 998 F.2d 743. The Court reasoned that since rights under the FEHA are "nonnegotiable" and "defined and enforced under state law without reference to the terms *of any* collective bargaining agreement," actions brought under the FEHA are preempted only if the claim requires the court to interpret disputed terms of a collective bargaining agreement. Id. at 748-49 (emphasis in original); see also Detabali, 482 F.3d at 1203.

In this case, Plaintiff alleges that she was harassed and discriminated against by Defendants on the basis of her sex, and retaliated against by the Union Defendants due to her opposition to the harassment and discrimination in violation of FEHA. Therefore, the Court must examine whether Plaintiff's sexual harassment and retaliation claims require the Court to interpret certain sections of the CBA. The Union Defendants contend that fundamentally, Plaintiff's claims require the interpretation of the CBA because she complains that she was not being assigned work. Thus, the Court must interpret § 10 of the CBA which governs the pay scale and terms under which ironworker apprentices work.[5]

Section 10 outlines the following parameters that must be observed in assigning apprentices work:

---

[5] (Declaration of Concepción E. Lozano-Batista in Support of Supplemental Notice of Removal of Civil Action and in Opposition to Plaintiff's Motion to Remand, Ex. A at 37, hereafter, "CBA," Docket Item No. 28.)

6

> C - When an individual employer has five (5) journeymen Iron Workers employed, excluding Foreman and supervisory employees, the sixth person employed shall be an indentured apprentice. An individual employer may hire indentured apprentices at a ratio of four (4) journeymen Iron Workers to one (1) indentured apprentice. The ratio of journeymen to indentured apprentices may be adjusted by mutual agreement between the employer and the appropriate Local Union Business Agent and/or the General Executive Board.
>
> C-1 - On ornamental and miscellaneous iron work which is normally performed by 2 iron workers, 1 may be an apprentice.
>
> D - Any apprentice who has been cancelled from the Apprenticeship Training Program (and has not been readmitted by action of the Joint Apprenticeship Committee) or who has dropped out of the Program shall not be permitted to register for employment or to enter the Apprenticeship Program of any Local Union covered by this Agreement; such person may not be dispatched as a journeyman.

(CBA § 10.C-D.) Having examined these provisions, the Court finds that although Plaintiff's claims may reference them, her claims do not place these provisions in dispute. Similarly, in Detabali, the Ninth Circuit held that the plaintiff's claim was not preempted by the LMRA because her FEHA claim did not center on a disputed meaning of the terms and conditions in her collective bargaining agreement, but was premised on whether her employer "discriminated against her in applying and/or altering the those terms and conditions." 482 F.3d at 1203. Here, Plaintiff's allegations concern whether she was refused work and, at least briefly, removed from the Apprenticeship Program based on discriminatory and retaliatory reasons. Plaintiff's right to be free from sexual harassment and retaliation by her employers and labor organizations are independent of any collective bargaining agreement. See Ramirez, 998 F.2d at 750.

Accordingly, the Court finds that Plaintiff's FEHA and related state law claims are not preempted by § 301 of the LMRA.[6]

---

[6] Although the parties do not address preemption under the LMRA of Plaintiff's Fourth Claim for intentional infliction of emotional distress, the Court finds that it is not preempted because, although the CBA contains a provision recognizing that parties to the CBA are required by law not to discriminate on the basis of sex, the outrageous conduct alleged by Plaintiff is not "covered" by the CBA. See Romero v. San Pedro Forlift, Inc., 266 Fed. Appx. 552, 557 (9th Cir. 2008).

**B.     Preemption Under § 9(a) of the NLRA**

In the alternative, Defendants contend that the Court has subject matter jurisdiction over Plaintiff's FEHA claim because it is premised on allegations that Defendants Meakin and Fairchild breached their duty of fair representation under § 9(a) of the NLRA. (Opposition at 4-5.)

All representatives of the members of a labor organization owe a duty of fair representation when engaging in any representational activity in which the union engages, including the negotiation, administration, and enforcement of collective bargaining agreements. Vaca v. Sipes, 386 U.S. 171, 177 (1967). This duty arises from § 9(a) of the NLRA, which authorizes a union to act as the exclusive agent for its members in collective bargaining with the employer. See 29 U.S.C. § 159(a); Vaca, 386 U.S. at 177. Whether preemption under § 9(a) of the NLRA is a sufficient basis for removing an action under 28 U.S.C. § 1442(b) is an unresolved issue in the Ninth Circuit. Compare Phillips v. Int'l Union of Operating Engineers, AFL-CIO, No. C 96-0363 VRW, 1996 WL 478689, at *3 (N.D. Cal. Aug. 7, 1996), with Madison v. Motion Picture Set Painters and Sign Writers Local 729, 132 F. Supp. 2d 1244, 1256-57 (C.D. Cal. 2000).

However, to determine whether the NLRA preempts a state law claim, a court must first determine whether the conduct alleged implicates the duty of fair representation. Phillips, 1996 WL 478689 at *1-2; Madison, 132 F. Supp. 2d at 1257. If a plaintiff's claim depends on the duty of fair representation, then it is preempted and must be analyzed pursuant to federal law. Phillips, 1996 WL 478689 at *2; Madison, 132 F. Supp. 2d at 1257. For example, in Phillips, the court held that the plaintiff's fraud claim against a union representative did not depend on the representative's duty of fair representation because the plaintiff alleged that he had relied on his personal trust of the defendant, and not solely his fiduciary duty. Phillips, 1996 WL 478689 at *2.

In this case, Plaintiff's FEHA claims against Meakin and Fairchild are based on Cal. Gov't Code §§ 12940(b), (c), (h) and (k). Together, these provisions prohibit a labor organization or individual from discriminating on the basis of sex in the selection of, training or discharge of a person in an apprenticeship training program. In addition, § 12940(k) prohibits "an employer, labor

8

organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Plaintiff alleges the following facts with respect to Meakin and Fairchild's violations of these provisions:

> In or around May 2008, Swain complained about the harassment to her union representative, Defendant Meakin, believing he would protect her from such mistreatment. (Complaint ¶ 22.)
>
> Meakin instructed Swain to drop the issue. He told her that if she pursued the matter, she would be "blacklisted," i.e., she would not be assigned to any jobs. Because Meakin was responsible for assigning jobs, he had the power to follow through with his threat. (Complaint ¶ 23.)
>
> Meakin promptly blacklisted Swain and made sure he did not assign her to any jobs. Swain was not assigned to any job during the busy summer months of June, July and August 2008 after having been consistently assigned to jobs for the previous year and half. Then she was kicked out of the union. (Complaint ¶ 25.)
>
> Once Swain was reinstated, Meakin continued to refuse to assign her to any jobs. When Swain finally was able to work outside Meakin's district, Fairchild promptly placed her on a 60-day medical leave to keep her from working. Fairchild took this unilateral action by falsely claiming that Swain herself had requested 60 days medical leave, thereby forcing Swain to take a "leave of absence." Moreover, Swain discovered that the union had cancelled her health benefits, so she was unable to see a doctor to clear her for work. (Complaint ¶ 27.)

Based on these allegations, the Court finds that Plaintiff's claims do not depend on Meakin and Fairchild's duty of fair representation. Rather, Plaintiff alleges that Meakin and Fairchild engaged in conduct that itself was discriminatory and constituted retaliation for her opposition to the conduct of Defendant Dywidag. Accordingly, the Court finds that Plaintiff's claims are not preempted by § 9(a) of the NLRA.

In sum, the Court finds that Plaintiff's claims are neither preempted by the LMRA nor the NLRA. Accordingly, the Court GRANTS Plaintiff's Motion to Remand on the ground that removal was improper for lack of federal question jurisdiction.

//

9

### **V.  CONCLUSION**

The Court GRANTS Plaintiff's Motion to Remand.  The Court DENIES Defendant Local 377 and Dennis Meakin's Motion to Dismiss and Defendant Dana Fairchild's Motion to Dismiss without prejudice to be renewed in state court.

The Clerk of Court shall immediately remand this case to the Superior Court of California for the County of Santa Clara and close this file.  Each party shall bear their own fees and costs.

Dated:  June 4, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alice Conway Powers powers@lbbslaw.com
Andrew Field Pierce apierce@pierceshearer.com
Barry E. Hinkle courtnotices@unioncounsel.net
Charles Oliver Thompson thompsonc@lbbslaw.com
Concepcion E. Lozano-Batista courtnotices@unioncounsel.net
Sandra Rae Benson courtnotices@unioncounsel.net
Stacy A. Smith stacy@pierceshearer.com

**Dated:  June 4, 2009**                                     **Richard W. Wieking, Clerk**

                                                             **By:   /s/ JW Chambers**
                                                                    **Elizabeth Garcia**
                                                                    **Courtroom Deputy**